UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMBERLY WILLIAMS, by next
friend, JOHN BENSON, JOHN
BENSON, and SOPHIA BENSON,

    Plaintiffs,

v.

DETROIT PUBLIC SCHOOLS,
MICHAEL BARCLAY, SECURITAS
SECURITY SERVICES, USA, INC.,
and ISAIAH CANTY,

    Defendants.
_____/

Case No. 13-14930
HON. AVERN COHN

## MEMORANDUM AND ORDER

### I. INTRODUCTION

**A.**

This is a state tort case with constitutional claims under 42 U.S.C. § 1983. Plaintiffs Timberly Williams ("Williams"), John Benson ("Mr. Benson"), and Sophia Benson ("Ms. Benson") are suing the Detroit Public Schools ("DPS"), Michael Barclay, ("Barclay"), Securitas Security Services, USA, Inc. ("Securitas"), and Isaiah Canty ("Canty"), claiming damages arising out of two separate interactions between Plaintiffs and Defendants Barclay and Canty on September 22 and 23, 2011.

Now before the Court is DPS and Barclay's Motion for Summary Judgment (Doc.

1

52) and Securitas and Canty's Motion for Partial Summary Judgment (Doc. 48)[1]. For the reasons that follow, DPS and Barclay's motion will be granted in part and denied in part; Securitas and Canty's motion will be granted.

At the outset, the Court notes that a number of Plaintiffs' initial claims have been abandoned or voluntarily dismissed.[2] In addition, the complaint makes no distinction between Williams, Mr. Benson, and Ms. Benson, and generally asserts violations against "Plaintiffs." A fair viewing of the facts described below, however, provides some clarity as to the claims asserted by each Plaintiff. The remaining claims before the Court are as follows

- **Count I:** Assault and Battery against Canty by Mr. Benson, arising out of the interaction on September 22, 2011.

    Assault and Battery against Barclay by Williams, arising out of the interaction on September 22, 2011.

---

[1] Although styled as a motion for "partial" summary judgment, Securitas and Canty's motion challenges all of Plaintiffs' claims against them. Therefore, motion is properly considered a motion for summary judgment.

[2] Plaintiffs Count IV alleges negligence against Canty. Plaintiffs offer no response to Canty's motion for summary judgment, evidently abandoning their claim. "This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013); *see also Hicks v. Concorde Career Coll.*, 449 Fed. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment).

Count V alleges intentional infliction of emotional distress against Barclay and Canty. Plaintiffs state in their response brief that they voluntarily dismiss this claim.

Count VI alleges constitutional violations under 42 U.S.C. § 1983 against DPS. Plaintiffs state in their response brief that they voluntarily withdraw their *Monell* claim against DPS.

For these reasons, Plaintiffs' Counts IV, V, and VI are DISMISSED.

> Assault and Battery against Canty by Ms. Benson, arising out of the second interaction on September 23, 2011

- **Count II:** Gross Negligence against Barclay by Williams, arising out of the interaction on September 22, 2011

- **Count III:** Negligence against Securitas by Mr. Benson, arising out of the interaction on September 22, 2011.

  Negligence against Securitas by Ms. Benson, arising out of the second interaction on September 23, 2011.

## II. BACKGROUND[3]

### A.

Securitas provides security services, including unarmed security officers, to DPS. At the time of the interactions described below, Canty was employed by Securitas as a security officer and assigned to the Marquette Elementary/Middle School. Williams was a seventh grade student at the Marquette School and Barclay was the assistant principal. Mr. Benson is Williams' step-father and Ms. Benson is Williams' mother.

### B.

#### 1.

On September 22, 2011, Williams was sent to the principal's office after getting into a verbal dispute with another student. Mr. Benson arrived at the school shortly thereafter at the request of Ms. Benson, who had received a phone call from Williams.

Upon arriving at the school, Mr. Benson encountered Barclay in the hallway. The

---

[3] The background of the case which follows is compiled from several statements of material facts submitted by the parties. Aside from a joint statement submitted by Plaintiffs and Defendants Securitas and Canty as to their motion for partial summary judgment (Doc. 58), there are several uncollated and/or unopposed statements of fact. (See Docs 51, 55, 55-1, 56-1, and 59) The parties have substantially failed to comply with the Court's motion practice guidelines requiring a joint statement of material fact accompanying a motion for summary judgment.

two men began arguing, and a shouting match ensued with each calling the other derogatory names. Barclay then directed Canty to remove Mr. Benson from the building, believing him to be a risk to the students. Mr. Benson says that Canty violently grabbed him, put him in a full nelson and/or a bear hug and escorted him out of the school. Mr. Benson admits that he resisted by grabbing a door as he was being escorted out.

Mr. Benson says that, because of this specific interaction, his preexisting bulged discs were aggravated, causing him to seek medical treatment. There is no evidence of permanent injury.

**2.**

Williams was present in the area when the encounter between Barclay, Canty, and Mr. Benson occurred. As Mr. Benson was being escorted out of the school, Barclay saw Williams on her cell phone. Williams was calling Ms. Benson to tell her that Mr. Benson and Barclay were "getting into it." Barclay grabbed Williams by the arm and told her to get off the phone, holding her for between one and two minutes. Thereafter, Barclay told Williams to leave the school; Williams walked out of the building on her own.

Williams says that, as a result of Barclay's action, her arm was bruised and red. She says that a subsequent physical examination revealed that her right arm and neck were tender to palpitation, and that she exhibited decreased range of motion and pain with movement. There is no evidence of permanent injury.

**C.**

On September 23, 2011, Ms. Benson went to the Marquette School to meet with

Barclay in an effort to get her son reinstated from a suspension. Upon arriving, Ms. Benson went to Barclay's office where she was told by a secretary to wait for him until he returned from the lunchroom. When Barclay returned, he and Ms. Benson got into a verbal dispute, with each calling the other derogatory names. In addition, Ms. Benson told Barclay that she was going to shoot him.

Barclay called for school security to come to his office and Canty responded. When Canty arrived at Barclay's office, Barclay directed him to remove Ms. Benson from the school. Ms. Benson told Canty not to touch her and called the Detroit police from her cell phone, ignoring Canty and refusing to leave. Canty grabbed her arm and a tussle ensued. Ms. Benson claims that her head was banged into a wall and chairs and that she punched Canty once in the face. Ms. Benson freed herself from Canty's grasp and walked out of the school.

Ms. Benson says that, as a result of the encounter, she sustained injuries to her head, back, left knee, and left arm and wrist, as well as increased anxiety and depression. She also says that she suffered a seizure on September 23, 2011 following the interaction. There is no evidence of permanent injury.

### III. STANDARD OF REVIEW

The standard for summary judgment is well known and is not repeated in detail. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd.*

*of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

## IV. BARCLAY'S MOTION FOR SUMMARY JUDGMENT

Barclay seeks summary judgment with respect to Williams' assault and battery claim under Count I and gross negligence claim under Count II.

### A. Assault and Battery Claim

*1.*

An assault is "any intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented"; battery "is the consummation of the assault." *Tinkler v. Richter*, 295 Mich. 396, 401 (1940).

However, "[t]he general rule is that a teacher is immune from liability for reasonable physical force or punishment used on a [student] to maintain discipline. Factors to consider in assessing the reasonableness of the punishment are the nature of the punishment, the [student's] age and physical condition, and the teacher's motive in inflicting the punishment." *Willoughby v. Lehrbass*, 150 Mich. App. 319, 340 (1986). However, when "punishment is excessive or improper, the teacher may be guilty of assault and battery." *Id*. at 341.

Further, M.C.L. 380.1312 provides that school employees enjoy immunity from civil liability for reasonable uses of force upon students:

> (4) A person employed by or engaged as a volunteer or contractor by a local or intermediate school board or public school academy may use reasonable physical force upon a pupil as necessary to maintain order and control in a school or school-related setting for the purpose of providing an environment conducive to safety and learning. In maintaining that order and control, the person may use physical force upon a pupil as may be

necessary for 1 or more of the following:

(a) To restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district or public school academy functions within a school or at a school-related activity, if that pupil has refused to comply with a request to refrain from further disruptive acts.

. . . .

(d) To quell a disturbance that threatens physical injury to any person.

. . . .

(5) A person employed by or engaged as a volunteer or contractor by a local or intermediate school board or public school academy who exercises necessary reasonable physical force upon a pupil, or upon another person of school age in a school-related setting, as described in subsection (4) is not liable in a civil action for damages arising from the use of that physical force and is presumed not to have violated subsection (3) by the use of that physical force. . . .

M.C.L. 380.1312(4)-(5).

### 2.

Barclay says that he is immune from tort liability because he used reasonable force against Williams and had the right to remove her from the school (1) to prevent her behavior from interfering with the orderly exercise and performance of school functions, and (2) to quell the ongoing physical altercation between Mr. Benson and Canty.

Based on the record, however, the Court cannot say that Barclay's actions toward Williams were reasonable. Although Williams was on her cell phone when Barclay grabbed her, there is no indication that Williams' was being significantly disruptive or that she interfered with the "orderly exercise and performance of [school] functions." Further, it is not clear that Barclay asked Williams to refrain from using her cell phone before resorting to physical force. Finally, there is no indication that grabbing

Williams by the arm and telling her to leave the school would have any effect on the altercation between Mr. Benson and Canty.

For this reason, Barclay's motion for summary judgment as to Williams' assault and battery claim is DENIED.

### B. Gross Negligence Claim

Michigan courts have long "rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence." *Bell v. Porter*, 739 F. Supp. 2d 1005, 1014 (W.D. Mich. 2010) (quoting *Miller v. Sanilac* Cnty., 606 F.3d 240, 254 (6th Cir. 2010)). Here, when properly viewed in light of the undisputed facts, Williams bases her gross negligence claim on her allegations of an intentional, offensive touching by Barclay. Williams does not allege a viable alternative basis for her gross negligence claim, nor does she allege harm that is unrelated to or distinct from Barclay's grabbing of her arm.

Williams' gross negligence claim is therefore subsumed into her assault and battery claim; for this reason, Williams fails to state a claim on which relief can be granted. Williams gross negligence claim is accordingly DISMISSED.

### V. CANTY'S MOTION FOR SUMMARY JUDGMENT

Canty seeks summary judgment with respect to Mr. Benson's assault and battery claim under Count I, as well as seeks summary judgment on Ms. Benson's assault and battery claim under Count I.

### A.

Under M.C.L. 338.1080, private security police forces who are properly licensed in the State of Michigan have the authority to make arrests to the same extent as public

peace officers. This section provides:

> A private security police officer, as described in section [M.C.L. § 338.1079], who is properly licensed under this act has the authority to arrest a person without a warrant as set forth for public peace officers . . . when that private security police officer is on the employer's premises. Such authority is limited to his or her hours of employment as a private security police officer and does not extend beyond the boundaries of the property of the employer and while the private security police officer is in the full uniform of the employer.

M.C.L. § 338.1080.

### B.

Based on this statute, courts in Michigan and in the Sixth Circuit have held that private security officers qualify as state actors under the "public function" test. *See Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir.2003) (en banc ) ("The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test."); *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005) ("Under the public function test, a private entity is said to be performing a public function if it is exercising powers traditionally reserved to the state, such as holding elections, taking private property under the eminent domain power, or operating a company-owned town.").

Under the public function test, *Romanski* held that defendant private security officers employed at a casino qualify as state actors in their ability to make arrests:

> It is undisputed that [defendants] were private security police officers licensed under M.C.L. § 338.1079. This means that [defendants'] qualifications for being so licensed were vetted by Michigan's department of state police, *id*. § (1), and that [defendants were] subject to certain statutes administered by that department. *Id*. § (2); *see* M.C.L. §§ 338.1067, 338.1069. More critical for present purposes are the undisputed facts that [defendants were] on duty and on the casino's premises at all times relevant to this case. These undisputed facts lead to

9

> an inescapable conclusion of law—namely, that at all times relevant to this case, [defendants] "ha[d] the authority to arrest a person without a warrant as set forth for public peace officers . . . ." M.C.L. § 338.1080. One consequence of [defendants'] possession of this authority, the authority to make arrests at one's discretion and for any offenses, is clear: at all times relevant to this case, [defendants were] state actor[s] as a matter of law.

428 F.3d at 638.

## C.

It is a well-established principle that the doctrine of qualified immunity shields state actors from liability based on their discretionary acts. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that "government officials performing discretionary functions generally are shielded from liability for civil damages"). Because of this doctrine, state actors are provided the freedom to perform their official duties without fear of liability for even minor errors. *See Wyatt v. Cole*, 504 U.S. 158, 167 (1992) ("[W]e have recognized qualified immunity for government officials where it was necessary to preserve their ability to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service."). However, immunity does not apply where state actors violate clearly established constitutional rights of which a reasonable person should have known. *Harlow*, 457 U.S. at 818 (holding that qualified immunity shields state actors only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). The doctrine will therefore not protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

## D.

Here, Canty qualifies as a state actor entitled to qualified immunity from Mr.

Benson's assault and battery claim.

There is no dispute that Securitas is fully licensed and authorized to provide private security services in the State of Michigan. (See Complaint, Doc. 1 at 8) Therefore, Canty, as an employee of Securitas, is considered a private security officer with the authority to make arrests to the same extent as public peace officers. In addition, there is no question that Canty was on duty and on the school's premises at all times on September 22, 2011. *Romanski* therefore controls, and Canty must be considered a state actor as a matter of law.

Therefore, Canty enjoys qualified immunity for the discretionary act of physically removing Mr. Benson from the school. Here, there is no question that Mr. Benson was engaged in a heated verbal dispute with Barclay. There is no dispute that Mr. Benson refused to leave the school voluntarily when directed to do so by Barclay, and that he resisted Canty's efforts to remove him. Nor is there any evidence—beyond mere allegations—that Canty used excessive force in doing so. Canty was therefore justified in removing Mr. Benson at Barclay's direction, and there is no indication that Canty "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known."

Mr. Benson's assault and battery claim against Canty is therefore DISMISSED.

**E.**

A similar result is necessary with respect to Ms. Benson's assault and battery claim. On September 23, 2011, Canty was on duty and on the school's premises at all relevant times. As with Mr. Benson, Ms. Benson was engaged in a heated verbal dispute with Barclay, refused to leave the school voluntarily, and resisted Canty's efforts

11

to remove her. In addition, Ms. Benson threatened that she would shoot Barclay upon leaving the school. Canty was therefore justified in removing Ms. Benson at Barclay's direction, and there is no indication that Canty's efforts in doing so were unreasonable.

Ms. Benson's assault and battery claim against Canty is therefore DISMISSED.

## VI. SECURITAS' MOTION FOR SUMMARY JUDGMENT

Securitas seeks summary judgment with respect to Mr. Benson's negligence claim under Count III, as well as seeks summary judgment on Ms. Benson's negligence claim under Count III.

### A.

Mr. Benson's claim against Securitas is based on the actions of Canty in removing him from the Marquette School on September 22, 2011, upon the direction of vice principal Barclay. As discussed above, there is no question that Mr. Benson was engaged in a heated verbal dispute with Barclay, refused to leave the school voluntarily, and resisted Canty's efforts to remove him.

In addition, Mr. Benson says nothing about the appropriate standard of supervision by Securitas, which is essential to his failure to supervise claim. *See, e.g.*, *Sanders v. Southwest Airlines Co.*, 86 F. Supp. 2d 739, 746 (E.D. Mich. 2000) (granting summary judgment on a negligent supervision claim because the plaintiff proffered "no evidence of the appropriate standard and . . . no evidence to support a showing of negligence in hiring, retaining, or supervising").

There is no issue of material fact as to Mr. Benson's negligence claims against Securitas. There is no question that Canty was justified in removing Mr. Benson at Barclay's direction.

Mr. Benson's negligence claim against Securitas is therefore DISMISSED.

**B.**

A similar result is necessary with respect to Ms. Benson's negligence claim against Securitas.  Here as well, there is no dispute that Ms. Benson was engaged in a heated verbal dispute with Barclay and refused to leave the school on September 23, 2011.  It also appears undisputed that Ms. Benson threatened that she would shoot Barclay.  Canty was therefore justified in removing her, and there is no indication that he used excessive force in doing so.  Finally, Ms. Benson's claim similarly fails to allege the appropriate standard of supervision, as discussed above.

Ms. Benson's negligence claim against Securitas is therefore DISMISSED.

### VII. CONCLUSION

For the reasons stated above, the Motion for Summary Judgment by DPS and Barclay (Doc. 52) is GRANTED IN PART AND DENIED IN PART.  The Motion for Partial Summary Judgment by Securitas and Canty (Doc. 48) is GRANTED.  Therefore, the sole remaining claim in the case is Williams' assault and battery claim against Barclay.

SO ORDERED.

    s/Avern Cohn
    Avern Cohn
    United States District Judge

Dated:  August 3, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 3, 2015, by electronic and/or ordinary mail.

    s/Julie Owens
    Case Manager